Good morning. May it please the Court, my name is Jay Nelson from the law firm Coleman & Ballow. We represent David Llamas-Gonzales. Mr. Llamas-Gonzales' first claim for relief is that the District Court committed plain error by failing to instruct the jury regarding 8 U.S.C. section 1401, little a. Based on the facts of this case, there are two derivative citizenship statutes that potentially apply to Mr. Llamas-Gonzales. One was the general derivative citizenship statute currently codified at 8 U.S.C. section 1401G, and the other is what we could call the military service statute, which is at 1401A. And the primary dispute between the parties on this issue is whether or not Mr. Llamas-Gonzales was required to present affirmative evidence regarding his father's military service in order to merit jury instruction regarding section 1401A. And I'd submit to the Court that the answer to that question has to be no. Based on the undisputed evidence at trial, Mr. Llamas-Gonzales is satisfied beyond a reasonable doubt three of the four elements of section 1401A, namely that he was born abroad to a U.S. citizen parent within the narrow 11-year window of time applicable to section 1401A. I would submit to the Court that having satisfied entirely three-quarters of the requirements of that statute and given that this defense of citizenship would negate an element of the charged offense, Mr. Llamas-Gonzales can't be reasonably required to also prove the only remaining element of the defense without running afoul of the burden of proof in a criminal case, and that it would shift the burden to him to effectively prove his own innocence. Now, faced with that obstacle, the government's primary response is, well, Mr. Llamas-Gonzales never presented a 1401A defense, but that's simply not true. Based on the evidence at trial, the opening statements, and the closing arguments, Mr. Llamas-Gonzales clearly presented a defense that he was a derivative United States citizen based on the citizenship of his United States citizen father. Now, when you go down the list, when you go down the subsections of section 1401, you look at all the ways in which Mr. Llamas-Gonzales could clearly not become a United States citizen, you check off most of them. He wasn't born on U.S. soil, he's not a Native American, so on and so forth. And when you check off every single possible way that a person could become a citizen that doesn't apply to Mr. Llamas-Gonzales based on the trial evidence, you're left with two, two possibilities for him to become a United States citizen through his father. Can you talk this a little slower? I know you're part of the texting generation, you know. I apologize, Your Honor. I'll slow it down. And you could probably get a good job as an announcer on radio or TV, but you get a lot of stuff in, you know. I'm trying to work in a career in law, Your Honor. Yeah? Okay. Well, that's all right. Thank you. They have lawyers on TV. The district court did not give an instruction on 1401A, did it? That's correct, and that's the nature of the error, Your Honor. Well, so whose point of proof was it to put in some evidence that the father was in the U.S. military at the time? I'm sorry, Your Honor. Whose burden of proof was it to put in some evidence that the father served in the military at the correct period in time? Well, in order to raise the defense of derivative citizenship under either 1401G or the military service statute, obviously Mr. Llamas-Gonzalez has the burden to present a small, a very minimal burden of production to raise the defense. And so here we submit that that's been satisfied. But what evidence did he submit as to the service in the U.S. military? There was no evidence in the record regarding the military service. And I would submit to the Court that that is not dispositive of the issue when the other three remaining elements of 1401A are satisfied. And when the only remaining element is the military service, in order to require Mr. Llamas-Gonzalez to prove that one as well, he would be required, in effect, to prove his own innocence, which is clearly improper. The other comment I would make on that point— What is the basis for an assertion that his father had served in the military? There's nothing in the record specifically on that point. Well, tell me, where is he getting this idea, your client? You know, I'm not aware—I haven't spoken with him necessarily about this particular issue. The question is— Well, you haven't talked to him about this issue? Well, I personally have not spoken with the client ever, actually. We have a law firm, and my colleague has spoken with the client. Well, did they talk to him? There has been some correspondence, as far as I understand, your Honor. But, of course, what we're dealing with here on appeal is the trial record. And— Do you know where he is today? He's in prison. Where? Frankly, your Honor, I'm not sure. So the record has no evidence, and you're saying the government was required to submit evidence. The record established— He was not in the military. The record established three of the four elements of this defense. And what I would ask the Court not to do is to elevate in importance the element of military service over the other three elements. Yeah, but that's the only thing that can get your client in the correct number of years in order to be a derivative citizen. That's the critical thing, given that it's obvious that there wasn't sufficient residency requirements met. Without the military service. Well, the other thing specific to Section 1401A is the fact of being born within the narrow 11-year window of time, which Mr. Yamas Gonzalez clearly satisfies. And so the question is, is the military service element the only operative element? Can you satisfy three of the four, but then say, well, no, but those ones aren't the important ones. You have to have the military service. Well, if you need to have four, give me an example of any other situation where the law says, well, if you get most of them, it's okay. Certainly, Your Honor. The Kloss case we cited in our papers from the Eleventh Circuit represents an example of precisely that scenario. There was an attorney charged with obstruction of justice. And his defense was, I was providing bona fide legal representation, and I did not commit obstruction of justice. This was a statutory exception to the charged crime. And what the Eleventh Circuit said there was you don't have to, even though the defense of bona fide legal representation negates the element of the offense of specific intent, you don't even have to make a representation in your proffer regarding specific intent. All you have to say is that produce evidence that you're an attorney and you are providing representation to this person. And that's good enough. That's a minimal showing to raise the defense sufficient that a jury instruction is warranted. And where's the minimal showing here that the father was in the military? There was a minimal showing based on the satisfaction of the other three elements. And having satisfied the other three elements, I would submit to the Court again that we can't reasonably expect Mr. We can't reasonably require Mr. Gonzalez to also prove his own innocence by establishing the only remaining element of the defense. The defense was clearly implicated by the trial evidence and the arguments of counsel. Well, he testified. I mean, if he's going to testify and, in fact, his parents were in the military, why didn't he testify to that? Well, I think what the record shows is that, frankly, Mr. Yamas Gonzalez doesn't know whether or not his father was in the military. The government has pointed to his INS citizenship application in which he left the field blank as to his father's military service. And the trial records show that he joined up with his father relatively late in his life. And the relationship between him and his father is not entirely clear. They never talked about military service. That's still something he could have gotten. He could have petitioned the government records, public records laws. There's ways to obtain that kind of information. That's true, Your Honor. I would submit that the government is in a much better position to obtain that sort of information than Mr. Yamas Gonzalez being an arm of the Federal Government itself. Maybe so, but he had the burden of proof. Well, look. He had a minimal burden of proof. Let me tell you this. I just had someone go online. And the father, Gilberto Yamas, Sr., he passed away at the age of 70. Died at the Palomar Medical Center in Escondido from injuries sustained in an automobile accident. And, I mean, he was a pretty successful businessman in Calexico. Founded the Valley Petroleum Equipment. Retired in 1992. And it talks a lot about him. It talks about his sister, Josefina, and lists all of his survivors. And the defendant is there. And there's nothing here about military service. Right, Your Honor. Which demonstrates that Mr. Yamas Gonzalez was not aware whether or not his father – I'm sorry. Can I see which document is Your Honor looking at? You just go online. I'll give you it. You can have this if you want it. And it's interesting in this modern day, you know, here's an obituary of a man who's buried at a cemetery, and then there's a Google ad that says, Think outside the box. And there's a 800 number to Neptune. You know, the Neptune Society. Who they are. I've heard of them. They do cremations. Okay. Yeah, so it's an American way of doing business these days, you know.  You know, he has a big family too. Certainly, Your Honor. So it's very sympathetic seeing what happened to him. Here he is. He suddenly learns that his father died suddenly in an automobile accident. At the same time, he finds out that he's not a U.S. citizen, even though he believed his whole life he was a U.S. citizen. And then on top of everything else, he's being deported. It's a terribly sympathetic situation. But I think the problem is that there just isn't any evidence that anyone has in front of them, or even that your client could testify to, that the parents were in the military. But when three of the four elements of that statute are stated? Well, he missed. See, he missed one of the basic elements, and that was his ten-year period. Yes, for the window of the child's birth. Yeah, window of the child's birth. He was born seven months too soon. So he just missed that. I think it's a ten-year window. He missed it by seven months. Oh, I see, under the terms of the Nationality Act of 1950. Yeah, yeah, yeah. Well, in that respect, obviously I'm well over my time, but if the Court has any questions regarding our claim that, in fact, under the Due Process Clause and the Uniform Clause of the Constitution, that, in fact, the 1986 version of the Citizenship Statute should be the one that properly applies to Mr. Yamas Gonzalez, I'd be glad to entertain any questions from the Court regarding our argument there. Although, again, like I mentioned, I'm, of course, over my time. Thank you. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Caroline Hahn on behalf of the United States. Your Honor, every single one of you pointed out the essential fact that there is, in fact, no evidence that the appellant's father or mother had any service at all in the military service. Your Honor, when the appellant submitted his N-600 application and it was submitted and included in his alien registration file, obviously there was a question in there about his military service, and that was important because all of the facts that are submitted have to be accounted for as to whether or not someone is actually a citizen. As the Citizenship and Immigration Service witness testified, all of those facts are taken into account, and unfortunately for the appellant he did not fall within the requirements of the Nationality Act of 1940. Now, the appellant now argues that he met three out of those four requirements of the 1401A statute, and as a result, the jury should have been instructed on that statute. However, the jury did not even need to be instructed on the general derivative citizenship statute at all because as a matter of law, the appellant did not meet the requirements of the Nationality Act of 1940, specifically because, again, his father did not meet those residency requirements as in the five years after 16 years of age, and as well the evidence was that his father was actually residing in Mexico when his father was married and also when the appellant was actually born. And so on that issue, there is no error here. The appellant insists that he met his burden of production, but that is, in fact, not the case. Again, as Your Honors have noted, there is no evidence on that point. Moving on to his criticism that the 1986 Act does not apply to his case, it is longstanding circuit precedent and Supreme Court precedent that the statute that applies to his case is the one that was in effect at the time that he was born. As to the issue of sufficiency of evidence, I would submit on that unless there are additional questions. So what year was he born? In 1952, Your Honor. Was that February? Yes, Your Honor. He was born in, I believe, January or February of 1952 and, in fact, missed the changing of the statute. Actually, the change of the statute came in December of 1952. And now, his father was 20 years of age when the defendant was born. Yes, Your Honor. He hadn't as yet reached his 21st birthday. Indeed, Your Honor. And he was, am I right, there was about a seven-month shortage? Yes, Your Honor. So if the defendant had been born seven months earlier or the defendant had been born seven months later, then they would have met all those requirements. Well, for that reason, as Justice Wardlaw pointed out, it is somewhat of a sympathetic case, but it's the government's. I'm correct in my math. Okay. Okay. So isn't there any – has the – have we ever made allowances for a person who's met three of the four and is just short seven months of the final requirement? Your Honor, if the we is Congress, yes. Congress can confer citizenship on whomever that they wish to confer citizenship. But the Citizenship and Immigration Service that adjudicates these N-600 applications, they don't have the ability in order to confer citizenship on somebody because they've missed it by six or seven months. So his best remedy is to talk to his congressperson. Yes. Well, Your Honor, yes. Yes. If ultimately that could lead to long-standing changes in immigration law. Well, to get a special bill passed for him. Yes, Your Honor. If, in fact, a representative sought to sponsor a bill for this particular appellant with all of his negative criminal history and other sort of factors about him and Congress wished to confer citizenship upon him, they could do that. But was he sentenced under A or B, 1326A? I mean, did he get the 16-level enhancement? Yes, Your Honor, he did. When was he sentenced to? Your Honor, he was sentenced to 100 months. As part of his sentence, and I know that that's not part of the record, but as part of his sentence that was the low ends of the guideline range, he had going back to 1968, he had criminal history going back to when he was 16 years old and had 23 convictions and a juvenile adjudication. In addition, he had immigration history going back to the 1970s, which is in the record, and obviously he had his family here as he testified at trial as well. What if he came up with evidence of his father's military service? Can he get another bite at the apple? Well, Your Honor, if, in fact, he could also resubmit an application for an N-600 and the Citizenship and Immigration Service could adjudicate that application, and if he qualified, he would get a certificate of citizenship. Yes. But that wouldn't—I mean, he's currently serving a criminal sentence. I guess he could attack it collaterally. Yes, Your Honor, ultimately. But, again, Your Honor, it is our contention that his father would not have met even the 10-year residency requirement because at the time that he was married and as well as at the time that the appellant was born, if you look at the birth certificates and his marriage certificate, it states that he was living in Mexico. I'm saying suppose he came up with evidence of— Yes, Your Honor. Well, the mother went down to, what, Texicali? Mexicali, Your Honor. Mexicali, Your Honor. It was in Texicali. Went down to Mexicali because her parents were there, and she was—they made the decision, it'd be better to have the child there than where they were living. That was the defendant's family lore, yes, Your Honor. Yes. And there's two cities, they're close proximities. People go back and forth, right? Yes, Your Honor, Calexico and Mexicali border each other. Yeah, yeah. Okay, where's he now? Do you know? Your Honor, I do not know what facility he's in. Okay. Thank you. All right, matter submitted.
judges: Zouhary, Pregerson, Wardlaw